[No. 26345. Department One. March 29, 1937.]

GEORGE R. MOSLER, *Respondent*, v. C. B. WOODELL *et al.*, *Appellants.*[1]

[1]Reported in 66 P. (2d) 353.

584

*Medley & Hanley,* for appellants.

*McWalter & Goldblatt,* for respondent.

BLAKE, J.—In the fall of 1932, the defendants Baker and Woodell organized a corporation known as Baker & Woodell, Inc., the sole business of which was the operation of a men's furnishing shop in the University district, in Seattle. September 6th of that year, the individuals, Baker and Woodell, entered into a contract with QRS Neon Corporation, Ltd., for the installation of a Neon sign on the premises in which the shop was located.

Throughout the contract, QRS Corporation is referred to as "Owner" and defendants as "User." The term of the contract was for thirty-six months from the date of installation. The defendants agreed to pay $12.50 per month for the installation and use of the sign—$25 upon the execution of the agreement, $12.50 upon completion of the installation, and $12.50 per month thereafter. The defendants had a thirty-day option to purchase the sign for $275. They did not exercise the option, however. The only payments that were made under the contract were that of $25

made when the contract was executed and two additional payments of $12.50 each.

The contract provided that, upon default by defendants,

"All unpaid amounts to the end of this agreement . . . shall, without notice or demand by Owner, be at once precipitated and become due and payable; and in any such event, as an alternative remedy, Owner may . . . take possession of and remove said installation and thereby terminate all rights and interests of User therein. And it is agreed that, in the event of such termination, all interest of User in said installation and in this agreement, plus unexpended costs of Owner and salvage, shall be valued at 20 per cent of payments for the unexpired term subsequent to date of such termination and solely in event of such termination and repossession shall be allowed in reduction of User's obligation hereunder. Provision is so made herein for a liquidated amount, in case of any such breach, for the reason that it is impracticable or extremely difficult to ascertain the actual amount of damage."

The "Owner" terminated the contract and took possession of the sign in accordance with the above quoted provision of the contract. Thereafter, the contract was assigned to plaintiff, who brought this action to recover $320 (that being the amount of the balance due under the contract, less twenty per cent), with interest and an attorney's fee of one hundred dollars—the contract providing for a reasonable attorney's fee. The cause was tried to a jury, which returned a verdict for plaintiff, in accord with the prayer of the complaint. Judgment was entered on the verdict. Defendants Woodell appeal.

Appellants have made thirteen assignments of error, eleven of which are directed to the same point. The contention is that, the sign having been repossessed by the "Owner," an action cannot be main-

tained for the installments of rent falling due subsequent to forfeiture. In considering this contention, it is to be borne in mind that this contract was in no sense a contract of sale. It was not contemplated that title to the sign should ever pass from the "Owner" to the "User" other than under the thirty-day option, of which appellants did not avail themselves. The contract was specific in declaring the title to be at all times in the "Owner," with the attendant right of possession at the end of the term, or sooner, upon the "User's" default.

Such contracts have a similarity to leases, and have been characterized as such. *Lamson Consol. Store Service Co. v. Bowland,* 114 Fed. 639. They have also been denominated bailments for hire. *Electrical Products Corp. v. Mosko,* 88 Colo. 447, 297 Pac. 991. But in whichever category they may fall, they are subject to the same rules of construction with respect to the rights and liabilities of the parties. Ordinarily, of course, where the lessor or bailor repossesses the property, liability of the lessee or bailee for future rents or charges ceases. *In re Miller Bros. Grocery Co.,* 219 Fed. 851, Ann. Cas. 1916A, 946, L. R. A. 1916B, 1099. But where the contract is clear and unequivocal in according to the lessor or bailor the right both to repossess and recover rents or charges to the end of the term, the contract will be enforced. *Metropolitan Nat. Bank v. Hutchinson Realty Co.,* 157 Wash. 522, 289 Pac. 56; *Electrical Products Corp. v. Mosko, supra.*

Appellants contend that the above quoted portion of the contract does not accord the "Owner" both rights. They point out that the right of the "Owner" to repossess is characterized "as an alternative remedy." Lifted from its context, the phrase gives some color to the contention. But when the para-

graph is read as a whole, there can be no doubt that the parties intended (and gave clear and unequivocal expression to the intention) that the "Owner" should have both the right to repossess and the right to recover rents falling due subsequent to forfeiture.

But, say appellants, the recovery stipulated is a penalty, and therefore not enforcible. Whether such a stipulation is to be held a provision for liquidated damages or a penalty, largely depends on the facts of the particular case. Such a stipulation will be held to provide for liquidated damages, if the damages flowing from a breach of the contract are uncertain, difficult of proof, and the amount agreed upon is not so disproportionate to the probable damages as to be unconscionable—providing, of course, that it is reasonably clear from the contract that the parties intended to stipulate for liquidated damages and not a penalty. *Madler v. Silverstone,* 55 Wash. 159, 104 Pac. 165, 34 L. R. A. (N. S.) 1.

Now, measured by this rule, it seems clear that the stipulation in the contract under consideration here was for liquidated damages. The contract was not for the mere use of *a* sign. The sign was specially designed and built by the "Owner" for the particular use of the "User." Not only that, but the "Owner" undertook the burden of installing and maintaining it in working order. The so-called rent was designed to compensate for these services, as well as the use of the sign. The sign could not be put to any useful purpose by anyone but appellants. As salvage, its value was negligible.

Taking into consideration all these factors, it is apparent that the damages resulting from appellant's breach of the contract would be uncertain and difficult of proof. Nor, in view of the price fixed in the option clause, are the damages agreed upon so dis-

proportionate to the probable damages resulting from a breach of the contract as to appear unconscionable. Taking the contract as a whole, we think it clear that the parties intended to provide for liquidated damages, and not a penalty. See *Electrical Products Corp. v. Mosko, supra; Lamson Co. v. Elliott-Taylor-Woolfenden Co.,* 25 F. (2d) 4; *Bassett v. Claude Neon Federal Co.,* 65 F. (2d) 526.

The appellants assign as error the admission in evidence of a design of the sign as built. The design was objected to because it was not the original, and had not been submitted to the appellants. The proof was that the original design, which had been submitted to appellants, had been destroyed, and that the design offered was identical with the original. It was properly admitted over the objection made.

But appellants now say that it was admitted in violation of the hearsay rule. Such objection, not having been made in the lower court, is not available here. *Murray v. Seattle,* 96 Wash. 646, 165 Pac. 895; *Cary-Davis Towing Co. v. Spradley,* 115 Wash. 93, 196 Pac. 655; *Wilbur v. Taylor,* 172 Wash. 537, 20 P. (2d) 1104.

Prior to the trial, pursuant to Rule VIII of Rules of Practice (Rem. Rev. Stat., § 308-8 [P. C. § 8676-11]), appellants caused the deposition of A. B. Beem, vice-president of QRS Corporation, to be taken. Mr. Beem was present at the trial and testified. Conceiving that his testimony at the trial was at variance with his testimony in the deposition, counsel for appellants called his attention to particular excerpts in his deposition. In all but one instance, he did not deny having made the statements contained in the deposition. Appellants nevertheless offered the whole deposition in evidence. The court rejected the offer —and very properly so. To have admitted the dep-

osition, under the circumstances, could serve no purpose but to unnecessarily encumber a record' already heavily loaded with exhibits. See *Lashbrook v. Spokane-Wallace Stages,* 168 Wash. 24, 10 P. (2d) 241.

The only object in offering any portion of the deposition would be to impeach the witness. The only relevant part of the deposition to accomplish such purpose was that relating to the subject concerning which the witness denied making the answer as shown in the deposition. To hold that the whole deposition should be admitted, under such circumstances, might lead to the introduction of much incompetent evidence through discovery depositions—evidence which could not be brought before the jury by the examination of the witness in court.

■ It is suggested that, in executing the contract, it was the intention to bind *Baker & Woodell, Inc.,* and not the individuals. The individuals, however, executed the contract without any reference whatsoever to the corporation. Clearly, it is their obligation.

Judgment affirmed.

STEINERT, C. J., MAIN, MILLARD, and GERAGHTY, JJ., concur.